# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**MATTHEW LOUIS ORASCO**
Reg #49363-044                                                                                          **PETITIONER**

VS.                                    NO. 2:22-cv-00156-BSM-ERE

**JOHN P. YATES,**
**Warden, FCI-Forrest City Low**                                                              **RESPONDENT**

## RECOMMENDED DISPOSITION

This Recommendation has been sent to United States District Judge Brian S. Miller. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

Objections must be filed within 14 days. If you don't object, you risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record.

## I.     INTRODUCTION

Matthew Louis Orasco, an inmate at the Federal Correctional Institution in Forrest City, Arkansas ("FCI-FC"), has filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus, alleging that the Bureau of Prisons ("BOP") is wrongly denying him the benefits of the First Step Act ("FSA") earned time credit ("ETC") program

because he is subject to a detainer issued by the Missouri Department of Correction ("MDC"). *Doc. 2*. Mr. Orasco contends that proper application of his ETCs would: (1) make him eligible for immediate release to the custody of the MDC to complete the remaining portion of his state sentence; and (2) entitle him to a shorter term of supervised release. *Doc. 2 at 2*. For reasons that follow, the Court recommends that the petition be dismissed, without prejudice, for failure to exhaust administrative remedies.

## II. BACKGROUND

On January 15, 2020, Mr. Orasco pleaded guilty in the District Court for the Eastern District of Missouri to possession with intent to distribute cocaine and being a felon in possession of a firearm. *United States v. Orasco*, No. 4:19-cr-00719-JAR (E.D. Miss. Jan. 15, 2020). On July 17, 2020, Mr. Orasco was sentenced to 48 months in prison, followed by three years of supervised release. *Id.*, ECF No. 67.

On August 10, 2021, while serving his federal sentence, Mr. Orasco appeared via videoconference in a Missouri state court and pleaded guilty to felony assault and armed criminal action. *State v. Orasco*, No. 20SL-CR03042-01(Cir. Ct. St. Louis Cty., Aug. 10, 2021). The Missouri court imposed a five-year prison sentence and ordered that it run concurrently with his four-year federal sentence. *Doc. 2 at 3*.

Mr. Orasco is currently subject to a state detainer issued by the MDC. According to the BOP's website,[1] his anticipated release date is January 18, 2023.

On September 8, 2022, Mr. Orasco filed the § 2241 petition before the court. *Doc. 2*. He argues that proper application of his ETCs would make him eligible for immediate release to MDC custody to complete the remainder of his five-year, state sentence. In addition, he contends that he should be excused exhausting his administrative remedies because to do so at this juncture would be futile and defeat the ends of justice. *Id at 6*. By way of relief, he asks the Court to: (1) verify his ETCs; (2) declare him eligible for immediate release to Missouri to complete his state sentence; and (3) direct that any unused portion of his ETCs be applied to reduce his term of supervised release. *Id. at 15, Doc. 19 at 6*.

On October 5, 2022, Respondent filed a response (*Doc. 5*), arguing that the Court should dismiss the petition for failure to exhaust administrative remedies or, alternatively, deny the petition because the BOP is not permitted to apply Mr. Orasco's ETCs toward prerelease custody or early transfer to supervised release because he is serving a term of imprisonment for a violation of non-federal law.[2]

---

[1] See www.bop.gov/inmateloc/ (last accessed December 12, 2022).

[2] *Doc. 5 at 4*. Respondent is correct that where a federal prisoner is serving a term of imprisonment pursuant to state law, the BOP is not permitted to apply FSA time credits toward prerelease custody or early transfer to supervised release. 28 C.F.R. § 523.44(a)(3). However, Mr. Orasco is not requesting that his ETCs be applied toward prerelease custody or early transfer to supervised release. Instead, he asks that the BOP apply his time credits to immediately release him to state custody and that any remaining ETCs be applied to shorten his term of supervised release.

On November 25, 2022, Mr. Orasco filed a reply (*Doc. 19*), restating arguments set forth in his petition.

For reasons that follow, the Court recommends that the petition be dismissed without prejudice for failure to exhaust administrative remedies.

### III.   DISCUSSION

#### A.   The ETC Program

The ETC program, enacted under the FSA, employs an incentive-based approach to reduce recidivism and assist prisoners in the reintegration process, which occurs at the latter stages of a federal sentence.[3] Under the program, eligible prisoners can earn up to 15 days of ETCs for every thirty days of successful participation in evidence-based, recidivism reduction programming and activities. 18 U.S.C. § 3632(d)(4)(A)(i)-(ii). Section § 3632(d)(4)(C) provides that a prisoner's ETCs are applied toward time in prerelease custody or supervised release: "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Section

---

[3] The BOP is charged by statute as follows:
> The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

3624(g), in turn, defines "prelease custody" as placement in home confinement or a residential reentry center, 18 U.S.C. § 3624(g)(1)(A), (g)(2), and if a prisoner's sentence includes a term of supervised release, § 3624(g) states that the BOP may "transfer the prisoner to begin any such term of supervised release at an *earlier* date, not to exceed 12 months, based on the application of [the earned] time credits . . . ." 18 U.S.C. § 3624(g)(3) (emphasis added).

    **B.    Exhaustion of Administrative Remedies Regarding Release to State Custody**

A federal inmate must normally exhaust his administrative remedies before seeking habeas relief under § 2241. *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974). Although this judicially created exhaustion requirement is not mandated by statute or a jurisdictional prerequisite, see *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007), it is designed to serve several purposes including:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

*Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976) (citing *McKart v. United States*, 395 U.S. 185, 194-195 (1969)).

The BOP has a four-step administrative process for resolving inmate grievances: (1) an attempt at informal resolution with prison staff; (2) submission of a formal grievance to the Warden, on form BP-9, delivered to the institution staff

member designated to it; (3) an appeal of an unfavorable Warden's decision to the appropriate Regional Director, on form BP-10; and (4) an appeal of an unfavorable Regional Director's decision to the General Counsel, on form BP-11. See 28 C.F.R. §§ 542.13–542.18. Proper exhaustion of administrative remedies "'means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Mr. Orasco argues that he made multiple attempts to exhaust his administrative remedies, but BOP officers failed to respond, which rendered further attempts to exhaust futile. *Doc. 19 at 4*. He presents documentation of an informal resolution that he submitted dated August 8, 2022, which stated in part, "I am eligible for immediate release to state custody to begin my state sentence." *Id. at 9*. Unsatisfied with the response he received, he filed a B-9 grievance with the FCI-FC Warden, dated September 9, 2022. *Id. at 10*. According to Mr. Orasco, he did not receive a written response within twenty days, which "excused him from the process." *Id. at 4*. However, Mr. Orasco presents a rejection notice that he received from the FCI-FC Administrative Remedy Coordinator, dated September 28, 2022, which states that his B-9 grievance, received the same day, was rejected because he failed to provide necessary evidence of his attempt at informal resolution. The notice states: YOU MAY RESUBMIT THE REQUEST IN PROPER FORM WITHIN 5

DAYS OF THE DATE OF THIS REJECTION NOTICE. *Id.* at 11.

BOP regulations provide that a grievance "is considered filed on the date it is logged into the Administrative Remedy Index as received." 28 C.F.R. § 542.18. Mr. Orasco's B-P grievance was received on September 28, 2022, and a written rejection notice was issued the very same day. Mr. Orasco was then obliged to either resubmit his grievance as directed or appeal the rejection notice to the Regional Director. He failed to do either and abandoned the exhaustion process.

Mr. Orasco has not exhausted his administrative remedies, nor has he demonstrated that doing so would be futile or defeat the interests of justice.[4] Whether Mr. Orasco is entitled to immediate release to state custody depends on facts absent from the current record, which are best developed in the administrative process. He must give the administrative process a chance to succeed by presenting his requests to the BOP and following each step of the administrative exhaustion process *before* seeking relief in federal court. If, after properly exhausting his administrative remedies, Mr. Orasco disputes the BOP's final decision, he may

---

[4] Mr. Orasco argues that resort to administrative remedies at this point defeats the ends of justice because when applied properly, the ETC program made him eligible for release to state custody "months ago." *Doc. 19 at 3*. However, statutes governing the ETC program contain no language giving the BOP authority to release a prisoner early to state custody. Based on the plain language of its provisions, the ETC program effects only where a federal prisoner will serve the latter part of his or her custodial federal sentence—whether in a BOP prison facility, home confinement, or a residential reentry center. And while the ETC program permits early transfer to supervised release, it does *not* grant the BOP authority to reduce or shorten a prisoner's term of supervised release.

return to federal court and seek relief under § 2241.

## IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that Petitioner Matthew Louis Orasco's petition for writ of habeas corpus (*Doc. 2*) be dismissed, without prejudice.

Dated this 12th day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE